UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOSHUA TINCH,                                                           Plaintiff,

v.                                            Civil Action No. 3:12-cv-844-DJH

JEFFERSON COUNTY PUBLIC SCHOOL
SYSTEM, et al.,                                                      Defendants.

* * * * *

**MEMORANDUM OPINION AND ORDER**

The Jefferson County Board of Education fired Joshua Tinch from his job as a high

school instructor after he was accused of inappropriate contact with a student.  Tinch then

sued JCBE and several individuals who played a part in his firing.  He alleges that JCBE

failed to provide him adequate due process.  He also asserts claims of defamation.  The

defendants have moved for summary judgment.  (Docket No. 91)  Because the Court

concludes that Tinch received adequate due process, and because the defendants enjoy

governmental and qualified state immunity against his defamation claims, the defendants'

motion for summary judgment will be granted.

## I.    BACKGROUND

The Jefferson County Board of Education hired Tinch on August 15, 2011, to work at

Iroquois High School as an "Instructor III."  (D.N. 91-1, PageID # 789)  Two weeks later,

Defendant Chris Perkins, the school's principal, suspended Tinch indefinitely.  (*Id*., PageID

# 790-91)  Perkins based the suspension on a handwritten statement prepared by a minor

student, R.D., alleging that she and Tinch had inappropriate contact.  (*Id*.)  Immediately after

receiving the note, Perkins called Tinch into his office, told him about the allegations, and

1

suspended him without pay pending the outcome of a personnel investigation.  (D.N. 100, PageID # 972)

Defendant Mike Mulhall, who works as an investigator for JCBE, conducted the investigation.  On September 22, 2011, Tinch and his counsel met with Mulhall so that Tinch could present his side of the story.  (*Id.*; D.N. 91-1, PageID # 792)  Mulhall showed Tinch and his counsel a photo of R.D. and 35 pictures of text messages between Tinch and R.D.  (D.N. 100, PageID # 973)  Tinch acknowledged some of the text messages but denied knowingly sending inappropriate or sexual text messages to R.D.; Tinch claimed that he thought Katie Colvin, "a fling friend," sent the text messages deemed to be of a sexual nature.  (D.N. 91-1, PageID # 793)  At the meeting, Tinch also provided Mulhall with a written statement.  (*Id.*)  A few days later, Tinch's counsel sent Mulhall a detailed copy of Tinch's cell phone records. (*Id.*)  Mulhall concluded that Tinch had thirteen outgoing calls to R.D., and that he had sent 102 text messages, as well as one picture video text, to R.D. (*Id.*, PageID # 794; D.N. 91-7, PageID # 868)

Mulhall interviewed R.D. on November 6, 2011.  She not only confirmed Mulhall's findings regarding her text communications with Tinch, but she also alleged that she and Tinch had sexual contact.[1]  (D.N. 91-1, PageID # 795)  After hearing R.D.'s allegations, Mulhall concluded that there was substantial evidence to support the finding that Tinch had inappropriate contact with R.D.  (*Id.*, PageID # 798)  He communicated his findings and submitted Tinch's written statement to JCBE's Director of Human Resources.  (*Id.*; D.N. 91-7, PageID # 875)

---

[1]  Apparently, local authorities later found R.D.'s claim of sexual contact to be unsubstantiated.  (D.N. 100-9, PageID # 1038-39)

2

After reviewing the results of Mulhall's investigation, Principal Perkins sent Tinch an "intent-to-discharge" notice on November 20, 2011.  (D.N. 91-1, PageID # 798)  Around this time, Lauren Roberts, JCBE's Public Information Officer, released Mulhall's report in response to a request under Kentucky's freedom of information law, the Open Records Act, Ky. Rev. Stat. Ann. § 61.870 *et seq.*  (D.N. 84, PageID # 772)  Roberts believed that the notification to Tinch was a "final action," and once Perkins confirmed that he had sent the notice, she released the record.  (*Id.*, PageID # 773)  She also discussed the investigation on television with a news reporter at least once.  (*Id.*)

The decision to terminate Tinch was reported to JCBE at its regular meeting on January 9, 2012.  (D.N. 91-1, PageID # 798)  On March 19, 2012, JCBE Superintendent Donna Hargens sent Tinch a letter explaining the basis for his termination.  (*Id.*)  The letter included a copy of JCBE's "Communication Procedures for Employees Exempt from Representation."[2]  (*Id.*)  In accordance with those procedures, Tinch elected to have a post-termination hearing.  (*Id.*, PageID # 799)

At the hearing—which was before JCBE Labor Management and Employee Relations Director Rob Tanner, also a defendant—Tinch and his counsel were afforded the opportunity to present any evidence refuting Mulhall's report.  (*Id.*)  Tinch presented two affidavits: one from Katie Colvin and another from Jeremy Walls, Colvin's boss.  (*Id.*, PageID # 800)  Colvin's affidavit discussed her relationship with Tinch.  (*Id.*)  Walls's affidavit simply

---

[2]  The purpose of this procedure is to "provide employees classified as exempt from representation by a recognized employee organization an opportunity to formally bring to the attention of appropriate administrative staff their concerns/complaints regarding the effect on them of the application of a policy, procedure, or rule."  (D.N. 91-15, PageID # 940)  In other words, Tinch had the right to challenge his firing in a post-termination hearing.

discussed Colvin's employment, which was an inconsequential point of contention.[3]  Tinch

did not call any witnesses.  (*Id*.)  After hearing the evidence presented, Tanner concluded that

Tinch's termination was appropriate.  (*Id*.)

Tinch sued JCBE[4], Principal Perkins, Investigator Mulhall, Superintendent Hargens,

and Director Tanner in state court.  (D.N. 35)  Tinch claimed that the defendants violated his

due process rights by terminating him and by publicly announcing "the allegations against

[him] and his purported discharge."  (D.N. 1-1, PageID # 14; D.N. 35)  The defendants

removed the case to this Court (D.N. 1), and now move for summary judgment.  (D.N. 91)

## II.   STANDARD

The Court may only grant a motion for summary judgment if "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The moving party must identify the basis for its motion and the parts of

the record that demonstrate an absence of any genuine issue of material fact.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).  If the moving party satisfies this burden, the non-moving

party must point to specific facts demonstrating a genuine issue of fact for trial.  *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The Court must view the evidence in the light most favorable to the non-moving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Still, the non-

moving party must do more than "simply show that there is some metaphysical doubt as to the

_____

[3] When Tinch initially mentioned Colvin to Mulhall during the September meeting, Mulhall went to find Colvin, but could not.  (D.N. 91-1, PageID # 793 n.7)  However, Walls's affidavit states that she did work where Tinch said she did.

[4] Tinch's original complaint was against "Jefferson County Public School System," by and through the Jefferson County Board of Education.  (D.N. 1-1)  In Tinch's amended complaint, however, he correctly identified the defendant as Jefferson County Board of Education.  (D.N. 35)

material facts." *Id*.  The non-moving party must present specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  Moreover, the non-moving party must establish a genuine issue of material fact with respect to each element of each of his claims.  *Celotex*, 477 U.S. at 322-23. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; instead, the non-moving party must present evidence upon which the jury could reasonably find for him.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 252).

## III.    DISCUSSION

### A.  Due Process

The defendants gave Tinch adequate notice and an opportunity to be heard prior to his termination.  "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central Hanover Bank & Tr. Co.,* 339 U.S. 306, 313 (1950)).  Tinch had a one-year contract with JCBE to work at Iroquois High School, and the parties do not dispute that this was a valid property interest.  (D.N. 91-1, PageID # 803); *see Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  Principal Perkins provided the requisite notice to Tinch when he called Tinch into his office to explain Tinch's indefinite suspension due to an allegation of inappropriate contact with a student.  (D.N. 91-1, PageID # 790)  Without citing any support, Tinch contends that this notice was inadequate because he deserved a more robust explanation and to know the extent of the evidence against him.  (D.N. 100, PageID # 973)  But he was

only entitled to "oral or written notice of the charges against him."  *Loudermill*, 470 U.S. at 546.  The notice Principal Perkins provided was sufficient.

Thereafter, Tinch was entitled to, and indeed received, an opportunity to be heard.  In *Loudermill*, the Supreme Court found that a pretermination hearing need not be elaborate. 470 U.S. at 545.  "The opportunity to present reasons, *either in person or in writing*, why proposed action should not be taken" is all that is necessary.  *Id*. at 546 (emphasis added). Tinch received an opportunity to meet in person with Investigator Mulhall and explain his side of the story.  (D.N. 91-1, PageID # 792)  Tinch also presented a written statement to Mullhall.  (*Id*.)  At the interview, Mulhall summarized and showed Tinch the evidence against him.  (*Id*.)  Though Mulhall did, as Tinch contends, go on to collect more evidence that Tinch did not review prior to his termination, the evidence he collected was merely corroborative: The text messages that insinuated a sexual encounter between Tinch and R.D. were discussed and Mulhall heard Tinch's explanation.  (*Id*., PageID # 793)  Mulhall then communicated his findings and submitted Tinch's written statement to JCBE's Director of Human Resources. (D.N. 91-1, PageID # 798; D.N. 91-7, PageID # 875)  Thus, Tinch received adequate pretermination due process.

Further, though Tinch's pretermination due process was adequate under the Fourteenth Amendment, Tinch also received a post-termination hearing.  This procedure is significant because "[d]epending on the circumstances, a pre-termination hearing, although necessary, may not need to be elaborate, as long as the plaintiff is entitled to a full hearing with the possibility of judicial review at the post-termination stage."  *Brickner v. Voinovich*, 977 F.2d 235, 237 (6th Cir. 1992).  "Post-termination hearings . . . 'serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee.'"  *Mitchell v.*

*Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004) (quoting *Duchesne v. Williams*, 849 F.2d 1004, 1008 (6th Cir. 1988)).  To meet minimal standards, a post-termination hearing must permit attendance by the terminated employee with assistance of counsel, the ability to call witnesses and produce evidence on his behalf, and the opportunity to "challenge the evidence against him." *Carter v. W. Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270 (6th Cir.1985) (per curiam); *see Mitchell v. Fankhauser*, 375 F.3d 477, 480-81 (6th Cir. 2004).  Tinch received a full post-termination hearing: He attended the hearing with counsel; he had the opportunity to present evidence and witnesses; and he was given the opportunity to challenge the evidence against him.  (D.N. 91-1, PageID # 799-800)  Though unnecessary to satisfy the *Loudermill* standard, JCBE afforded Tinch a post-termination hearing, which bolstered his protection against a Fourteenth Amendment violation.

Tinch contends that the defendants did not give him the opportunity to present his case in front of an impartial and disinterested tribunal.  (D.N. 100, PageID # 975)  To satisfy due process, "both the appearance and reality of fairness" are necessary.  *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980); *see Yashon v. Hunt*, 825 F.2d 1016, 1027 (6th Cir. 1987) (applying *Marshall* in the employment context and finding no due process violation).  JCBE's procedures pass this test.  Perkins put Tinch on notice of the allegations against him; JCBE investigated the allegations; Tinch presented his side both orally and in writing prior to his termination; and JCBE also provided Tinch with a post-termination hearing, which afforded him a final opportunity to present his side of the case.  (D.N. 91-1, PageID # 791-800) Principal Perkins, Investigator Mulhall, Superintendent Hargens, and Director Tanner concluded that termination was appropriate.  (*Id.*)  The JCBE process utilized here satisfies

the *Marshall* requirements of "both the appearance and reality of fairness." *See* 446 U.S. at 242. The Court therefore grants summary judgment as to Tinch's due process claim.

### B. Defamation

Tinch contends that his defamation claim arises out of the Fourteenth Amendment to the U.S. Constitution. (D.N. 100, PageID # 977) If so, then Tinch argues that granting governmental immunity under Kentucky law to JCBE for his defamation claim violates the Supremacy Clause. (*Id*.) But even if Tinch's defamation claim arises from the Fourteenth Amendment and warrants protection under the Due Process Clause, as Tinch contends it does, JCBE afforded him adequate due process, as discussed above. *See supra* Part III.A.; (D.N. 100, PageID # 970 (citing *Paul v. Davis*, 424 U.S. 693, 708 (1976) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." (quoting *Wis. v. Constantineau*, 400 U.S. 433, 437 (1971)))) And even though Tinch is correct that the alleged defamatory act occurred prior to the post-termination hearing, the pretermination due process Tinch received was sufficient under *Loudermill*. 470 U.S. at 545. This leaves only a defamation claim based upon state law.

To the extent that Tinch alleges a state defamation claim, as opposed to a Fourteenth Amendment defamation claim—his complaint is unclear—JCBE correctly contends that it is immune. (*See* D.N. 35) Kentucky law recognizes governmental immunity for local boards of education. *Yanero v. Davis*, 65 S.W.3d 510, 526-27 (Ky. 2001). Local boards are entitled to governmental immunity if the action subject to tort liability is performance of a governmental function—i.e., carrying out a function integral to state government, as opposed to a

proprietary function.[5]  *Id*. at 520, 527.  Earlier in this case, the late Senior Judge John G. Heyburn II found that JCBE employee Roberts released Mulhall's report to media organizations pursuant to a Kentucky Open Records Act request.  (D.N. 84, PageID # 773); *see* Ky. Rev. Stat. Ann. § 61.870 *et seq.*  JCBE is required under Kentucky law to respond to such requests.  *Id.*  Responding to open records requests is a government function, and consequently, JCBE is immune from Tinch's state-law defamation claims.  Summary judgment will therefore be granted as to as to Tinch's Kentucky law defamation claims against JCBE.

The four remaining individual defendants are also immune.  A state employee is entitled to qualified immunity against damages when the act subject to tort liability is discretionary in nature, as opposed to ministerial in nature.  *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010).  Discretionary acts can be "performed in one or two or more [lawful] ways" and involve "the exercise of discretion and judgment, or personal deliberation, decision, and judgment."  *Haney*, 311 S.W.3d at 240; *See also Yanero*, 65 S.W.3d at 522. Conversely, ministerial acts are acts that "require 'only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts."  *Haney*, 311 S.W.3d at 240 (quoting *Yanero*, 65 S.W.3d at 522).  Because "few acts are purely discretionary or purely ministerial," the Court looks for "the *dominant* nature of the act."  *Id*. (emphasis in original).

---

[5] "[G]overnmental immunity is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency."  *Yanero*, 65 S.W.3d at 519 (quoting 57 Am. Jur. 2d Municipal, County, School and State Tort Liability § 10 (2001)).  It is distinguishable from official immunity, or state qualified immunity, which protects "a government official in making decisions involving the exercise of discretion."  *Id*. at 521.

Tinch argues that Perkins did not act with discretion in suspending and terminating him; that Mulhall did not act with discretion in investigating him; that Hargens did not act with discretion in determining Tinch's termination was merited; and that Tanner did not act with discretion in conducting the post-termination hearing and upholding his termination. (D.N. 100, PageID # 981-84)  He focuses on the fact that these individuals were performing their job functions and, in doing so, were considering guidelines found in written policies or advice from others.  (*Id.*)  His arguments, however, are meritless.

How Principal Perkins decided to act when R.D. accused Tinch of misconduct was discretionary.  *See Marson v. Thomason*, 438 S.W.3d 292, 299 (Ky. 2014) ("looking out for children's safety is a discretionary function for a principal, exercised most often by establishing and implementing safety policies and procedures.").  Likewise, Investigator Mulhall utilized discretion when conducting his investigation and writing his recommendation; the process involved deliberation and the exercise of judgment.  *See Yanero*, 65 S.W.3d at 522.  How Superintendent Hargens decided to act once she received the necessary information also involved deliberation and judgment.  *See id.*  And Director Tanner, who presided over the post-termination hearing, engaged in an easily recognizable deliberative process.  *See Haney*, 311 S.W.3d at 240.  Therefore, each individual defendant is entitled to state qualified immunity, and summary judgment will be granted as to Tinch's remaining state law claims.

## C.  Tinch's Sur-Reply

Magistrate Judge Colin H. Lindsay entered an order giving Tinch "up to and including February 19, 2016" to file a Sur-Reply to the defendants' motion for summary judgment. (D.N. 104)  Tinch failed to comply with that order by filing a Sur-Reply out of time, on

March 24, 2016.  (D.N. 106)  He also failed to request a further extension of the deadline. Accordingly, the Court will strike Tinch's Sur-Reply as untimely.

<h3 style="text-align:center">IV.    CONCLUSION</h3>

The defendants afforded Tinch adequate due process prior to terminating his employment for inappropriate contact with a student.  Moreover, the defendants are entitled to governmental and qualified immunity against any remaining state-law claims Tinch asserts. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Defendants' Motion for Summary Judgment (D.N. 91) is **GRANTED**.

(2)    The Clerk of Court shall **STRIKE** Defendant Joshua Tinch's Sur-Reply (D.N. 106) from the record.

(3)    A separate judgment will issue this date.

April 18, 2016

**David J. Hale, Judge**
**United States District Court**